# HOLTZMAN *v.* THE UNITED STATES.

## WAGGAMAN *v.* SAME.

## GALE *v.* SAME.

REAL ESTATE AGENTS; REMOVAL OF SNOW AND ICE FROM SIDE-WALKS; CONSTITUTIONAL LAW.

1. Real estate agents whose agency is restricted to the collection of rents of property or the soliciting and submission of offers to purchase, are not within the meaning of the Act of Congress of March 2, 1897 (29 Stat. 618), requiring the owner, agent or tenant of real estate within this District to remove snow and ice from paved sidewalks in front of their property, and are therefore not liable to the penalties of that statute.
2. Whether that act is constitutional as to those to whom its provisions might be held properly to apply, *quære.*

Nos. 873, 874 and 875.  Submitted March 10, 1899.  Decided April 4, 1899.

IN ERROR to the Police Court of the District of Columbia. *Judgments reversed.*

The facts are sufficiently stated in the opinion.

*Mr. Irving Williamson* for the defendants in error Holtzman and Waggaman.

*Mr. Geo. E. Hamilton* and *Mr. M. J. Colbert* for the defend-ant in error Gale.

*Mr. Henry E. Davis,* U. S. Attorney for the District of Columbia, and *Mr. Ashley M. Gould,* Assistant Attorney, for the United States.

Mr. Justice MORRIS delivered the opinion of the Court:

These cases come to us from the Police Court of the District of Columbia upon writs of error.

Under date of March 2, 1897, there was passed an act of Congress entitled, "An Act for the removal of snow and ice from the sidewalks, cross-walks and gutters in the District of Columbia, and for other purposes," (29 Stat. 608), which act is in the following words:

"Be it enacted, etc., etc., that the owner, agent or tenant of each house or other building or lot or lots of ground in the cities of Washington and Georgetown, and in such other part or parts of the District of Columbia as the Commissioners of said District shall from time to time designate, shall, within the first four hours of daylight after every fall of snow, cause the same to be removed entirely from off the paved sidewalks opposite each house, building, lot, or land under the penalty of one dollar for each lot for every such neglect, to be paid by the said owner, agent, or tenant; and such owner, agent, or tenant shall, under a like penalty, within five days after a notice to do so by the Commissioners, clean off and remove, or cause to be cleaned off and removed, all dirt, sand, gravel, or other refuse matter that may fall or be washed upon any paved sidewalk, roadway, or alley inside the cities of Washington and Georgetown, and in such other part or parts of the District of Columbia as the Commissioners of said District shall from time to time designate.

"Sec. 2. That in case the sidewalks are covered with ice, the owner, agent or tenant of any building, lot, or lots of ground in the cities of Washington and Georgetown, and in such other part or parts of the District of Columbia as the

Commissioners of said District shall from time to time designate, shall promptly cause the paved sidewalks or paved portions of the sidewalk opposite his, her, or their premises to be strewn with ashes, sand, sawdust, or some other suitable substance that will insure or contribute to the safety of pedestrians, under the penalty of one dollar for each lot for every neglect, to be paid by the said owner or tenant.

"Sec. 3. That in case the owner, agent, or tenant of any house, lot, building, or land shall neglect to comply with any of the preceding provisions of this act, it shall be the duty of the Commissioners of the District of Columbia to cause the removal of snow and ice, or any dirt, sand, or gravel from all paved sidewalks and alleys in the cities of Washington and Georgetown, and in such other part or parts of the District of Columbia as the Commissioners of said District shall from time to time designate, wherever there has been a failure on the part of the owner, agent, or tenant as aforesaid to remove the same; and the cost of such removal, by order and under the direction of the said Commissioners, shall be assessed as a tax against the property to which the sidewalks in question belong, for the purposes of this act, and the said tax so assessed shall be carried to the regular tax roll of the District aforesaid, and shall be collected in the manner provided for the collection of other taxes.

"Sec. 4. That it shall be the duty of the Commissioners of the District of Columbia, immediately after every fall of snow on the cross-walks or in the gutters, forthwith to cause the same to be removed from the said cross-walks to a width of ten feet and from out of the said gutters to a breadth of one foot, in the said cities respectively, and in such other part or parts of the District of Columbia as the Commissioners of said District shall from time to time designate; and the said cross-walks and gutters shall be kept clear and free from obstructions, and in case the cross-walks are covered with ice, it shall be their duty to cause such cross-walks to be liberally

sprinkled with sand or sawdust, or such other material as will insure safety to pedestrians."

On the night of December 31, 1898, and January 1, 1899, there was a considerable fall of snow in the city of Washington; and for alleged failure to remove the deposit of snow from the sidewalks adjoining certain pieces of land and houses, with which it is claimed they had some connection as agents, the plaintiffs in error were summoned to answer informations filed against them in the Police Court of the District. The proceedings are understood to be in the nature of test cases. They resulted in judgments against the several defendants, and the imposition of fines; and thereupon, in pursuance of bills of exceptions taken in the several cases, appeals were allowed to this court. From the informations and the several bills of exceptions, which are amply sufficient and yet most commendably brief, we gather the following statement of facts:

All the parties are real estate agents doing business in the city of Washington. As such real estate agent, Mr. Holtzman had in his charge, for the purpose merely of renting it, an unoccupied house, No. 1424 Q street, northwest, in this city, on which he had a sign with the words "for rent" thereon. He was not in any way interested in the property as owner. His only connection with it was for three years back to find a tenant for it, to collect the rents, and to account to the owner therefor. He had no funds in his hands wherewith to pay taxes or to make improvements; and he had no other connection whatever with the property.

Mr. Waggaman had in his charge for the purpose of sale only, and for no other purpose whatever, an unimproved lot of ground, designated as Lot No. 18, in Square No. 311, fronting on a paved sidewalk on Rhode Island avenue, northwest, in the city of Washington; and he had a sign on the lot with the words "for sale." He had been authorized by the owner of the land upwards of four years ago to obtain and submit offers for the purchase thereof, with the under-

standing that in the event of sale he would receive a commission for his services; but he had no further or other interest or concern with the property. The taxes were not paid by him; and he had no funds whatever in his hands to be used in connection with the property.

Mr. Gale is one of the firm of Thomas J. Fisher & Co. Lots 1, 2, 8, 9, and 10, in Square 899, in the city of Washington, which are vacant and unimproved lots, owned by persons residing in Boston, in the State of Massachusetts, had been placed many years ago in the hands of Thomas J. Fisher & Co., for sale. Their authority was limited to the one act of offering the property for sale subject to the approval of the owner or owners; and they exercised no control or ownership whatever over the property, did not pay the taxes, were not authorized to make any expenditures in relation to it, and had not any money in their hands or under their control wherewith to meet any expenditures whatever on account of the property or in connection therewith. They had a sign board on the property marked "For sale by Thomas J. Fisher & Co., agents." It was also developed that between the lots of ground mentioned and the paved sidewalks in front of them there intervenes a parking or grass plot, the fee simple ownership of which, as well as that of the sidewalks, is in the United States.

It is conceded or proved that at the time specified, January 2, 1899, the defendants, the plaintiffs in error here, did not remove the snow, as required by the act of Congress; and the question which it is desired to determine is whether there was any legal obligation upon them to do so. The cases, as we have stated, are test cases. The facts in all of them are substantially the same. The questions of law are the same. The three cases were argued together before us as one case, and they do not require distinct or several consideration by us.

It is not often that in so short a statute as this which we have cited there are found so many crudities and inconsistencies;

and we can not but suppose that Congress has been led into its enactment without due consideration in reliance upon its promoters and upon the good purpose which it was evidently intended to subserve. The cities of Washington and Georgetown are mentioned in it, apparently in total ignorance of the fact that there is not in existence any such city as that of Georgetown, the corporate organization of which had been terminated upward of two years before the enactment of this statute by an Act of Congress of February 11, 1895, which annexed the city of Georgetown to the city of Washington. By the statute it is sought to make owners, agents and tenants responsible for the removal of dirt, sand, gravel, and other refuse matter from the sidewalk, no matter by whom or under what circumstances deposited there; and this too, apparently from any and all sidewalks in the city of Washington, and not merely from the sidewalks in front of their lands or houses. It even requires them to go into the roadways and alleys of the city in order to remove such deposits of refuse matter therefrom.

The statute also seeks to make owners, agents, and tenants absolute insurers of the safety of pedestrians upon ice-covered sidewalks, by the requirement that such sidewalks shall be "strewn with ashes, sand, sawdust, or some other suitable substance that *will insure* or contribute to the safety of pedestrians." The provisions of the third section that, in the event of the failure of owners, agents, or tenants to perform the things required of them, the Commissioners of the District shall cause those things to be done, and shall assess the costs as a tax to be included in the general taxes against the property "to which the sidewalks in question belong," is, to say the least of it, of doubtful validity, and is absolutely meaningless in a penal statute, when it is remembered that the sidewalks in the city of Washington do not belong to any adjacent property, but that the title to them is in the United States. Equally meaningless, in part at least, and perhaps more absurd, is the provision of the

fourth section in as far as it makes it the duty of the Commissioners of the District to cause the removal of snow from the cross-walks and gutters outside of the cities of Washington and Georgetown, "in such part or parts of the District of Columbia as the Commissioners of said District shall from time to time designate." And the whole act is open to the grave objection that it is unequal in its operation, fails to reach non-resident owners of vacant land or unoccupied property, and makes no provision for the removal of snow or ice from the sidewalks in front of the squares and open places and the other property of the United States, for which some such provision is as much required, for the purposes of the act, as for the sidewalks in front of private property.

There are probably other crudities, inconsistencies, and inequalities in the act; but these which we have enumerated are sufficient to show that the promoters of this legislation procured its enactment by Congress without due deliberation by that body upon all of its provisions.

The crudity of the enactment is made more apparent by the able and ingenious argument of the counsel who appeared for the United States in these cases. In his brief he says:

"It is apparent that such a law, to be of any practical value, must be comprehensive enough to secure the continuous removal of the snow from the entire length of the sidewalks. If but half the footway is cleared, no benefit is derived. It is a matter of common observation that a considerable proportion of real property in every city is owned by non-residents or by residents who are temporarily absent. In either case they are beyond the jurisdiction of courts, in so far as being immediately subjected to legal process. As before stated, the municipality is compelled to meet an emergency, and quick action is necessary. It is on this account that all similar laws select some resident, whose relations to the owner and to the property are such as to give

him a special interest therein, and impose upon him the duty which devolves upon the owner when present."

And he proceeds to argue that the plaintiffs in error occupied such relations in the present instance, that there is no grade to be recognized in the matter of agency, and that it was competent for Congress to impose such duty and liability upon such agents as the plaintiffs in error are shown to have been.

Certainly no greater absurdity could be imputed to the act than the assumption that by it Congress intended to seize upon residents of the District of Columbia, whom it had within its power, and compel them to perform the duties which it was incumbent upon non-residents to perform, but which could not be enforced from them because they were without the jurisdiction.

After all, the proposition is not seriously controverted that agents, such as the plaintiffs in error are, could not have been intended to be included in the act of Congress in question. For all the purposes of this act, for all and every purpose except one, they are total strangers to the property and to the owners of it. They have no charge or control of the property, and no connection with it such as would warrant under any circumstances the imposition upon them of any such duties as the act seeks to impose. If it is competent at all for Congress to make agents who have charge of property responsible for such duty as is here sought to be imposed, about which we express no opinion, such responsibility could only be imposed where the agents have full charge and control of the property. To say that because a person is authorized to solicit offers for the purchase of a piece of property and to report such offers to his principal, therefore he can lawfully be required to have a deposit of snow removed from the sidewalk in front of the premises, is an absurdity so glaring that we can not impute to Congress the intention so to legislate. It is reasonable to suppose that the agents intended in the act were only such

agents as were for the time in full charge and control of the property, and were the owners in fact as to all the world except their principals. In support of a proposition so plain and elementary in its nature, it is unnecessary to multiply words or to cite authorities.

It being very apparent to us that the plaintiffs in error are not within the purview of the act of Congress in question, and that, in respect of the several pieces of land mentioned in the informations, they are not amenable to the penalties of the act, it is unnecessary for us to express any opinion on the broader question of the constitutionality of the enactment as to those to whom the provisions of the act might be held properly to apply. We prefer to wait until a case arises in which the determination of that question becomes necessary, especially in view of the fact that the emergency to which the statute relates is not likely to arise again for many months, and it may be deemed expedient by those having such matters in charge to apply to Congress for additional legislation to remove the inequalities and to correct the infirmities of the existing statute.

It follows from what we have said that the several judgments of the Police Court in the premises must be *reversed.*

The causes will be remanded to that court, with directions to vacate the judgments in each and all of them, to quash the several informations, and to discharge the defendants. *And it is so ordered.*